JS-6

1   IRELL & MANELLA LLP
    Bruce A  Wessel (SBN 116734)
2   Andra Barmash Greene (SBN 123931)
    Elliot Brown (SBN 150802)
3   Laura W  Brill (SBN 195889)
    David C. Codell (SBN 200965)
4   Elizabeth L  Rosenblatt (SBN 203196)
    1800 Avenue of the Stars, Suite 900
5   Los Angeles, California 90067-4276
    Tel   (310) 277-1010, Fax.  (310) 203-7199
6
    LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
7   Jon W. Davidson (SBN 89301)
    Myron Dean Quon (SBN 166076)
8   6030 Wilshire Boulevard, Suite 200
    Los Angeles, California 90036
9   Tel.  (323) 937-2728, Fax  (323) 937-0601

10  PEOPLE FOR THE AMERICAN WAY FOUNDATION
    Elliot M  Mincberg (admitted pro hac vice)
11  Judith E  Schaeffer (admitted pro hac vice)
    2000 M Street, N W., Suite 400
12  Washington, DC 20036
    Tel . (202) 467-4999, Fax  (202) 293-2672
13
    Attorneys for Plaintiffs
14

15  HILL, FARRER & BURRILL LLP
    James A  Bowles (SBN 089383)
16  E  Sean McLoughlin (SBN 174076)
    300 South Grand Avenue
17  37th Floor – One California Plaza
    Los Angeles, CA  90071-3147
18  Tel   (213) 620-0460, Fax: (213) 624-4840

19  Attorneys for Defendants

20              UNITED STATES DISTRICT COURT

21              CENTRAL DISTRICT OF CALIFORNIA

22                    SOUTHERN DIVISION

23  ANTHONY COLIN, by and through his          )   Case No  SA CV 99-1461 DOC (ANx)
    mother and guardian, JESSIE COLIN, et al , )
24                                             )   STIPULATION AND REQUEST FOR
                    Plaintiffs,                )   DISMISSAL OF THE LAWSUIT AND
25                                             )   [PROPOSED] ORDER THEREON
            v                                  )
26                                             )   Judge: Hon. David O. Carter
    ORANGE UNIFIED SCHOOL DISTRICT,            )
27  et al ,                                    )
                    Defendants                 )
28  _____     )

332504

1    WHEREAS, the above captioned action (the "Lawsuit"),  between plaintiffs Anthony

2  Colin, by and through his mother and guardian, Jessie Colin, and the Gay-Straight Alliance Club

3  of El Modena High School (the "Club"), an unincorporated association (collectively, "Plaintiffs")

4  and Defendants Orange Unified School District (the "District"), Orange Unified School District

5  Board of Education (the "Board"); Linda Davis, in her official capacity as President of the Board,

6  Martin Jacobson, in his official capacity as Vice President of the Board; Kathy Ward, in her

7  official capacity as Clerk of the Board, Maureen Aschoff, William Lewis, Terri Sargeant, and

8  Robert Viviano, in their official capacities as Members of the Board, Barbara Van Otterloo, in her

9  official capacity as Superintendent of the District, and Nancy Murray, in her official capacity as

10  Principal of El Modena High School (collectively, "Defendants"), was lodged on or about

11  November 24, 1999,

12    WHEREAS, on December 21, 1999, Plaintiffs filed a First Amended Complaint in the

13  Lawsuit alleging claims for relief for violations of the Federal Equal Access Act, 20 U.S.C  § 4071

14  et seq , the Civil Rights Act of 1871; and the Due Process and Equal Protection Clauses of the

15  Fourteenth Amendment to the United States Constitution; and for Declaratory Relief,

16    WHEREAS, the Lawsuit challenged, inter alia, action taken by the District's Board on

17  December 7, 1999 with respect to the Club's application that had been submitted to School

18  officials at or about the beginning of the 1999-2000 school year,

19    WHEREAS, on January 5, 2000, Defendants filed their Answer to the First Amended

20  Complaint denying any violation of law;

21    WHEREAS, this Court granted plaintiffs' motion for a preliminary injunction on February

22  4, 2000,

23    WHEREAS, this Court entered an Order on June 10, 2000, dismissing without prejudice

24  claims brought in the name of Heather Zetin by and through her mother and guardian, Judy

25  Anderson;

26    WHEREAS, this Court entered an Order on May 30, 2000, requiring the parties to appear

27  before the Honorable Harry L  Hupp for mediated settlement discussions pursuant to Local Rule

28  23, and

1    WHEREAS, the parties appeared before Judge Hupp and thereafter continued to
2   participate in good faith settlement negotiations,

3    WHEREAS, the parties reached a written agreement to settle this action on terms mutually
4   acceptable to the parties ( the "Agreement"), which is attached hereto as Exhibit 1,

5    WHEREAS, the parties executed the Agreement in August 2000, with the Agreement to
6   become effective upon the Board's adoption of certain amendments to its policies and regulations
7   applicable to all student clubs

8    WHEREAS, the Board on September 7, 2000 adopted the amendments to its policies and
9   regulations contemplated by the Agreement, which amended policies and regulations are attached
10   hereto as Exhibit 2,

11    WHEREAS the Agreement became effective on September 7, 2000, upon the adoption of
12   these amendments,

13    WHEREAS, the Agreement provides that it shall be rendered null and void absent entry of
14   an Order of dismissal by the Court in conformity with the terms described in Paragraph Four of
15   the Agreement, and

16    WHEREAS, the parties will make themselves available, if necessary, for a hearing before
17   this Court on the topic of settlement and dismissal of the action,

18    NOW, THEREFORE, the parties hereby stipulate and request that the Court enter an Order
19   as follows:

20    1   Pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure and Local Rule
21   20 1, and pursuant to stipulation by and among Plaintiffs and Defendants, the above-captioned
22   action is dismissed without prejudice

23    2.  For a period of three (3) years from the date of entry of the Order of dismissal, the
24   Court shall retain jurisdiction over the parties and the Agreement, including the power to confirm
25   or otherwise enforce decisions of the Arbitrator made pursuant to Paragraph Eighteen of the
26   Agreement and Exhibit B to the Agreement and to award attorneys' fees arising out of the Lawsuit
27   as provided in the Agreement,

28

332504

1          3    At the end of the three-year period, the dismissal of the Lawsuit shall be deemed "with

2    prejudice" and the Court's continuing jurisdiction shall terminate, provided that no court action or

3    arbitration proceeding is then pending pursuant to Paragraphs Three (C) or Eighteen of the

4    Agreement,

5          4    In the event that a court action or an arbitration proceeding pursuant to Paragraphs

6    Three (C) or Eighteen of the Agreement is pending on the date when the Court's jurisdiction

7    would otherwise terminate, then the Court shall continue to retain jurisdiction over the parties and

8    the Agreement until such time as a final judgment has been entered on such court action or

9    confirming an award arising out of such arbitration proceeding and all court and/or arbitration

10   proceedings adjudicating issues of attorneys' fees and costs have been finally resolved, at which

11   time the Court's dismissal shall be deemed "with prejudice" and the Court's continuing

12   jurisdiction shall terminate

13         5    Defendants shall bear their own costs and attorneys' fees in connection with the

14   Lawsuit    Plaintiffs shall bear their own costs and attorneys' fees in connection with the Lawsuit

15   unless an Arbitrator enters an award declaring that, at any time within three (3) years from the

16   Effective Date of the Agreement, any Defendant or the successor of any Defendant has done any

17   of the following  (1) violated the terms of the Agreement, (2) adopted, implemented, or enforced

18   against any Plaintiff or Club member any new rule, regulation, policy, practice, or procedure

19   (collectively "New Rule") that is more restrictive of student expressive or associational activities

20   than the corresponding rule, regulation, policy, practice, or procedure described in Paragraphs Five

21   through Eight of the Agreement (referred to in the Agreement as a "More Restrictive New Rule"),

22   (3) adopted, implemented, or enforced against any Plaintiff or any Club member any New Rule

23   restricting student expressive or associational activities, which New Rule is unconstitutional or

24   otherwise violates federal or state law (referred to in the Agreement as an "Unlawful New Rule"),

25   (4) implemented, enforced, or applied any of the rules, regulations, policies, practices, or

26   procedures described in Paragraphs Five through Eight of the Agreement in a manner that

27   discriminates against Plaintiffs or any Club member based on the expressive content of speech at

28   meetings of the Club or based on the actual or perceived sexual orientation of any Club member,

1   or (5) otherwise violated any Plaintiff's or any Club member's expressive or associational rights

2   with respect to Club meetings or activities under the Equal Access Act or the First or Fourteenth

3   Amendment to the United States Constitution, or other federal or state law   Nothing in the

4   foregoing shall be construed to require Plaintiffs to bring a proceeding relating to the conduct

5   described in Paragraphs Four (C) (3)-(5) of the Agreement before an arbitrator, rather than a court,

6   in the first instance

7        6   The time in which any Plaintiff may apply to this Court for recovery of costs and

8   attorneys' fees in connection with the Lawsuit is tolled and extended to 30 calendar days after an

9   arbitration award in favor of any Plaintiff or any Club member is confirmed and a final judgment

10   in favor of any Plaintiff or any Club member is entered upon a finding or declaration that any

11   Defendant or the successor of any Defendant has, within three (3) years of the Effective Date of

12   the Agreement, performed any of the acts described in Paragraphs Four (C)(1) – (5) of the

13   Agreement

14        7.   Defendants agree not to challenge Plaintiffs' right to apply to the Court for recovery of

15   attorneys' fees and costs arising out of the Lawsuit pursuant to Title 42 United States Code

16   Section 1983 or Section 1988, as allowed under Paragraphs Four, Nine, and Eighteen of the

17   Agreement, but Defendants retain the right to challenge Plaintiffs' entitlement to

18

19

20

21

22

23

24

25

26

27

28

1  | recover any costs or fees under 42 United States Code Section 1983 or Section 1988 and retain the

2  | right to challenge the amount of fees or costs sought by Plaintiffs

3  | Dated· September 18, 2000                    IRELL & MANELLA LLP
4  |                                             Bruce A. Wessel
   |                                             Andra Barmash Greene
5  |                                             Elliot Brown
   |                                             Laura W. Brill
6  |                                             David C. Codell
   |                                             Elizabeth L Rosenblatt

7  |                                             LAMBDA LEGAL DEFENSE AND
8  |                                             EDUCATION FUND, INC.
   |                                             Jon W Davidson
9  |                                             Myron Dean Quon

10 |                                             PEOPLE FOR THE AMERICAN WAY
   |                                             FOUNDATION
11 |                                             Elliot M. Mincberg
   |                                             Judith E Schaeffer

12 |
13 |                                             By  _Len W Brill_____
14 |                                                 Laura W Brill
   |                                                 Attorneys for Plaintiffs

15 | Dated  September ___, 2000                   HILL, FARRER & BURRILL LLP
16 |                                             James A. Bowles, Esq
   |                                             E  Sean McLoughlin, Esq.
17 |
18 |                                             By: _____
19 |                                                 James A. Bowles
   |                                                 Attorneys for Defendants
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

332504                                      - 5 -

1 | recover any costs or fees under 42 United States Code Section 1983 or Section 1988 and retain the

2 | right to challenge the amount of fees or costs sought by Plaintiffs

3 | Dated: September ___, 2000

IRELL & MANELLA LLP
Bruce A  Wessel
Andra Barmash Greene
Elliot Brown
Laura W. Brill
David C. Codell
Elizabeth L  Rosenblatt

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC
Jon W  Davidson
Myron Dean Quon

PEOPLE FOR THE AMERICAN WAY
FOUNDATION
Elliot M. Mincberg
Judith E  Schaeffer


By: _____
Laura W  Brill
Attorneys for Plaintiffs

Dated  September 21, 2000

HILL, FARRER & BURRILL LLP
James A  Bowles, Esq
E  Sean McLoughlin, Esq.


By: _____
James A  Bowles
Attorneys for Defendants

**PLAINTIFFS:**

Dated.  September __, 2000

_____
ANTHONY COLIN

Dated  September __, 2000

_____
JESSIE COLIN, Mother and guardian of Anthony Colin

Dated  September __, 2000

_____
GAY-STRAIGHT ALLIANCE CLUB
OF EL MODENA HIGH SCHOOL, by Anthony Colin
as its designated and authorized representative


**DEFENDANTS:**

Dated:  September ___, 2000

_____
ORANGE UNIFIED SCHOOL DISTRICT,
by Superintendent Barbara Van Otterloo
as its authorized representative

Dated.  September ___, 2000

_____
ORANGE UNIFIED SCHOOL DISTRICT BOARD OF
EDUCATION, and BOARD MEMBERS LINDA DAVIS,
MARTIN JACOBSON, KATHY WARD, TERRI
SARGEANT, MAUREEN ASCHOFF, WILLIAM LEWIS,
and ROBERT VIVIANO, in their respective official
capacities, by Board Clerk Kathy Ward, as authorized
representative of the Orange Unified School District
Board of Education and all Board Members in their
official capacities

Dated  September ___, 2000

_____
BARBARA VAN OTTERLOO, in her official capacity
as Superintendent of the Orange Unified School District

Dated: September ___, 2000

_____
NANCY MURRAY, in her official capacity
as Principal of El Modena High School

332504

- 6 -

**PLAINTIFFS:**

Dated  September ___, 2000

_____
ANTHONY COLIN

Dated  September ___, 2000

_____
JESSIE COLIN, Mother and guardian of Anthony Colin

Dated  September ___, 2000

_____
GAY-STRAIGHT ALLIANCE CLUB
OF EL MODENA HIGH SCHOOL, by Anthony Colin
as its designated and authorized representative

**DEFENDANTS:**

Dated  September 21, 2000

_____
ORANGE UNIFIED SCHOOL DISTRICT,
by Superintendent Barbara Van Otterloo
as its authorized representative

Dated· September 21, 2000

_____
ORANGE UNIFIED SCHOOL DISTRICT BOARD OF
EDUCATION, and BOARD MEMBERS LINDA DAVIS,
MARTIN JACOBSON, KATHY WARD, TERRI
SARGEANT, MAUREEN ASCHOFF, WILLIAM LEWIS,
and ROBERT VIVIANO, in their respective official
capacities, by Board Clerk Kathy Ward, as authorized
representative of the Orange Unified School District
Board of Education and all Board Members in their
official capacities

Dated  September 21, 2000

_____
BARBARA VAN OTTERLOO, in her official capacity
as Superintendent of the Orange Unified School District

Dated. September 21, 2000

_____
NANCY MURRAY, in her official capacity
as Principal of El Modena High School

332504                          - 6 -

**[PROPOSED] ORDER**

GOOD CAUSE appearing therefor, the Joint Stipulation and Request for Dismissal of the Lawsuit is hereby GRANTED, and it is FURTHER ORDERED that

1   The above-captioned action (the "Lawsuit") is dismissed without prejudice,

2   For a period of three (3) years from the date of entry of the Order of dismissal, the Court shall retain jurisdiction over the parties and their Settlement Agreement ("the Agreement"), attached as Exhibit 1 to the Joint Stipulation and Request for Dismissal, including the power to confirm or otherwise enforce decisions of the Arbitrator made pursuant to Paragraph Eighteen of the Agreement and Exhibit B to the Agreement and to award attorneys' fees arising out of the Lawsuit as provided in the Agreement,

3   At the end of the three-year period, the dismissal of the Lawsuit shall be deemed "with prejudice" and the Court's continuing jurisdiction shall terminate, provided that no court action or arbitration proceeding is then pending pursuant to Paragraphs Three (C) or Eighteen of the Agreement,

4   In the event that a court action or an arbitration proceeding pursuant to Paragraphs Three (C) or Eighteen of the Agreement is pending on the date when the Court's jurisdiction would otherwise terminate, then the Court shall continue to retain jurisdiction over the parties and the Agreement until such time as a final judgment has been entered on such court action or confirming an award arising out of such arbitration proceeding and all court and/or arbitration proceedings adjudicating issues of attorneys' fees and costs have been finally resolved, at which time the Court's dismissal shall be deemed "with prejudice" and the Court's continuing jurisdiction shall terminate

5.   Defendants shall bear their own costs and attorneys' fees in connection with the Lawsuit   Plaintiffs shall bear their own costs and attorneys' fees in connection with the Lawsuit unless the Arbitrator (to be chosen in accordance with the Agreement) enters an award declaring that, at any time within three (3) years from the Effective Date of the Agreement, any Defendant or the successor of any Defendant has done any of the following· (1) violated the terms of the Agreement, (2) adopted, implemented, or enforced against any Plaintiff or Club member any new

1   rule, regulation, policy, practice, or procedure (collectively "New Rule") that is more restrictive of

2   student expressive or associational activities than the corresponding rule, regulation, policy,

3   practice, or procedure described in Paragraphs Five through Eight of the Agreement (referred to in

4   the Agreement as a "More Restrictive New Rule"), (3) adopted, implemented, or enforced against

5   any Plaintiff or any Club member any New Rule restricting student expressive or associational

6   activities, which New Rule is unconstitutional or otherwise violates federal or state law (referred

7   to in the Agreement as an "Unlawful New Rule"), (4) implemented, enforced, or applied any of

8   the rules, regulations, policies, practices, or procedures described in Paragraphs Five through Eight

9   of the Agreement in a manner that discriminates against Plaintiffs or any Club member based on

10  the expressive content of speech at meetings of the Club or based on the actual or perceived sexual

11  orientation of any Club member, or (5) otherwise violated any Plaintiff's or any Club member's

12  expressive or associational rights with respect to Club meetings or activities under the Equal

13  Access Act or the First or Fourteenth Amendment to the United States Constitution, or other

14  federal or state law.  Nothing in the foregoing shall be construed to require Plaintiffs to bring a

15  proceeding relating to the conduct described in Paragraphs Four (C) (3)-(5) of the Agreement

16  before an arbitrator, rather than a court, in the first instance

17      6   The time in which any Plaintiff may apply to the Court for recovery of costs and

18  attorneys' fees in connection with the Lawsuit is tolled and extended to 30 calendar days after an

19  arbitration award in favor of any Plaintiff or any Club member is confirmed and a final judgment

20  in favor of any Plaintiff or any Club member is entered upon a finding or declaration that any

21  Defendant or the successor of any Defendant has, within three (3) years of the Effective Date of

22  the Agreement, performed any of the acts described in the Paragraphs Four (C)(1) – (5) of the

23  Agreement

24      7   Defendants shall not challenge Plaintiffs' right to apply to the Court for recovery of

25  attorneys' fees and costs arising out of the Lawsuit pursuant to Title 42 United States Code

26  Section 1983 or Section 1988, as allowed under Paragraphs Four, Nine, and Eighteen of the

27  Agreement, but Defendants retain the right to challenge Plaintiffs' entitlement to recover any costs

28

1   or fees under 42 United States Code Section 1983 or Section 1988 and retain the right to challenge

2   the amount of fees or costs sought by Plaintiffs

3

4   Dated·   _September 27, 2000_        _David O. Carter_

5                                         Hon  David O  Carter
                                          Judge, United States District Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

332504

CONFIDENTIAL SETTLEMENT COMMUNICATION

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into by and between Plaintiffs ANTHONY COLIN, by and through his mother and guardian, JESSIE COLIN, and the GAY-STRAIGHT ALLIANCE CLUB OF EL MODENA HIGH SCHOOL, an unincorporated association (herein referred to as "the Club") (herein collectively referred to as "Plaintiffs") and Defendants ORANGE UNIFIED SCHOOL DISTRICT (herein "District"), ORANGE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION (herein "Board"), LINDA DAVIS, in her official capacity as President of the Board; MARTIN JACOBSON, in his official capacity as Vice President of the Board, KATHY WARD, in her official capacity as Clerk of the Board, MAUREEN ASCHOFF, WILLIAM LEWIS, TERRI SARGEANT, and ROBERT VIVIANO, in their official capacities as Members of the Board; BARBARA VAN OTTERLOO, in her official capacity as Superintendent of the District, and NANCY MURRAY, in her official capacity as Principal of El Modena High School (herein collectively referred to as "Defendants").

This Agreement shall become effective upon (1) a vote by the Board approving the terms of this Agreement, (2) the adoption by the Board of the policies, regulations, and amendments described in Paragraphs Six through Eight herein; (3) the execution of this Agreement by all Plaintiffs and by Defendants Barbara Van Otterloo, on behalf of herself in her official capacity as District Superintendent and on behalf of the District, Nancy Murray, on behalf of herself in her official capacity as Principal of El Modena High School ("School"); and by Kathy Ward, on behalf of herself in her official capacity as Clerk of the Board and on behalf of the Board and each Board Member and Board Officer in his or her official capacity; and (4) the adoption of this Agreement by Resolution of the Board, which Resolution authorizes Kathy Ward to execute this Agreement on behalf of the Board and on behalf of each Board Member and Board Officer in his or her official capacity   The "Effective Date" of this Agreement is the date on which the last of these conditions is completed   This Agreement shall not become effective unless and until each of these conditions has been satisfied.

## RECITALS

A       On or about November 24, 1999, Plaintiffs filed a lawsuit against Defendants in the United States District Court for the Central District of California, Southern Division, which lawsuit was entitled Colin et al. v. Orange Unified School District et al., and was designated as Case No. SA CV 99-1461 DOC (ANx) (herein referred to as the "Lawsuit").

B.      On December 21, 1999, Plaintiffs filed a First Amended Complaint in the Lawsuit alleging claims for relief for violations of the Federal Equal Access Act, 20 U.S.C. § 4071, et seq.; the Civil Rights Act of 1871; the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and for Declaratory Relief. The Lawsuit challenged, inter alia, action taken by the District's Board on December 7, 1999 with respect to the Club's application that had been submitted to School officials at the beginning of the 1999-2000 school year.

CONFIDENTIAL SETTLEMENT COMMUNICATION

C      On January 5, 2000, Defendants filed their Answer to the First Amended Complaint denying any violation of law.

D      Plaintiffs and Defendants want to settle the Lawsuit and to resolve amicably all issues arising out of the application of the Club and the Defendants' actions in response thereto as set forth herein

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, Plaintiffs and Defendants AGREE AS FOLLOWS:

### ONE:            GRANTING OF APPLICATION OF THE CLUB

Defendants unconditionally grant Plaintiffs' application for recognition of the Club for the purposes set forth in the Club's application, including the Constitution and Mission Statement originally submitted to administrators of the School in September 1999, subject to the lawful and lawfully applied policies and regulations of general application governing conduct at the meetings of all noncurriculum-related student clubs. Defendants agree not to require Plaintiffs to change the Constitution or Mission Statement of the Club in the future or to impose restrictions on the activities of the Club on account of its Constitution or Mission Statement. Defendants agree to afford the Club and its members all of the same rights and privileges accorded to other noncurriculum-related student clubs and members of such clubs at the School.

### TWO:            NAME OF THE CLUB

The formal name of the Club shall continue to be the "Gay-Straight Alliance Club of El Modena High School." Plaintiffs may also use the name "Gay-Straight Alliance," or associated acronyms, such as "GSA," or "GSAC," to identify the Club. Defendants consent to the use of these names and acronyms. Defendants agree not to require Plaintiffs to change the name of the Club in the future or to impose restrictions on the activities of the Club or its members on account of the Club's name.

### THREE:        EQUAL ACCESS

(A)      The parties agree that Defendants are subject to the terms of the Equal Access Act, 20 U.S.C. § 4071, et seq., and binding case law interpreting the Equal Access Act as long as a limited open forum exists at the School. Defendants agree that in accordance with the Equal Access Act, they shall not deny the Club or its members equal access to or a fair opportunity to meet within the limited open forum at the School as long as a limited open forum exists at the School within the meaning of the Equal Access Act, or discriminate against the Club or its members on the basis of the religious, political, philosophical or other content of the speech at Club meetings.

CONFIDENTIAL SETTLEMENT COMMUNICATION

(B)     The parties agree that the limited open forum that exists at the School includes at least the following rights and opportunities for student groups and their members. (1) to meet on campus during noninstructional time, (2) to use School facilities; (3) to participate in "Club Rush" and all other activities in which Defendants permit noncurriculum-related student groups to participate; (4) to post or to have posted announcements, posters, and banners on School bulletin boards or other locations made available by the School for such purposes, (5) to distribute fliers and to have announcements broadcast via the School's public address system, (6) to hold fundraising activities and to engage in community service and other activities, (7) to be included as a student club in the School yearbook, which shall include, at least, a photograph and accompanying list of all Club members who wish to be included in the Club's yearbook photograph, as well as the right of each member of the senior class who is also a member of the Club to list the Club next to that senior's yearbook picture as a student club of which he or she is a member; and (8) to list Club membership or leadership roles on applications to colleges or other secondary or post-secondary educational institutions  Defendants agree that they shall not discriminate against the Club or its members with respect to any of the above rights and opportunities, or with respect to any other rights and opportunities.  Defendants agree that they shall not subject the Club to a higher degree of monitoring or supervision than other student clubs at the School receive.

(C)     The parties agree that, except as provided in Paragraphs Four and Eighteen below, Plaintiffs retain the right to bring a lawsuit in court for any future violation of the federal Equal Access Act, Title 42 United States Code Section 1983, the United States Constitution, other federal law, or the Constitution or laws of the State of California occurring after the Effective Date of this Agreement.  The parties agree that any such future lawsuit shall not be considered an "action on a contract" subject to the provisions of California Civil Code Section 1717  The parties further agree that this Agreement does not limit any party's right to seek attorneys' fees in any such future lawsuit alleging a violation of federal or state law.

**FOUR:        DISMISSAL OF THE LAWSUIT**

(A)     Plaintiffs and Defendants agree that within ten business days of the Effective Date of this Agreement, Plaintiffs shall, by and through their attorneys of record, prepare a Stipulation and Request for Dismissal of the Lawsuit, and accompanying [Proposed] Order Thereon containing the provisions set forth in this Paragraph Four.  Plaintiffs and Defendants further agree that within fifteen business days of the Effective Date of this Agreement, the parties shall sign the Stipulation and Request for Dismissal of the Lawsuit.  Within twenty business days of the Effective Date of the Agreement, Plaintiffs will, upon signature by all parties, cause the Stipulation and Request for Dismissal of the Lawsuit and accompanying [Proposed] Order Thereon to be filed in the United States District Court for the Central District of California.

(B)     The terms of the Stipulation and Request for Dismissal of the Lawsuit and accompanying [Proposed] Order Thereon shall recite that: (1) such dismissal is without prejudice and is requested pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), and for a period of three (3) years from the date of entry of the Order of dismissal, the District Court shall retain jurisdiction

3

CONFIDENTIAL SETTLEMENT COMMUNICATION

over the parties and this Agreement, including the power to confirm or otherwise enforce decisions of the Arbitrator made pursuant to Paragraph Eighteen of this Agreement and Exhibit B to this Agreement and to award attorneys' fees arising out of the Lawsuit as provided herein, (2) at the end of the three-year period, the dismissal shall be deemed "with prejudice" and the Court's continuing jurisdiction shall terminate, provided that no court action or arbitration proceeding is then pending pursuant to Paragraphs Three (C) or Eighteen of this Agreement, (3) in the event that a court action or an arbitration proceeding pursuant to Paragraphs Three (C) or Eighteen of this Agreement is pending on the date when the District Court's jurisdiction would otherwise terminate, then the District Court shall continue to retain jurisdiction over the parties and this Agreement until such time as a final judgment has been entered on such court action or confirming an award arising out of such arbitration proceeding and all court and/or arbitration proceedings adjudicating issues of attorneys' fees and costs have been finally resolved, at which time the Court's dismissal shall be deemed "with prejudice" and the Court's continuing jurisdiction shall terminate.

(C)     Defendants shall bear their own costs and attorneys' fees in connection with the Lawsuit. Plaintiffs shall bear their own costs and attorneys' fees in connection with the Lawsuit unless an Arbitrator enters an award declaring that, at any time within three (3) years from the Effective Date of this Agreement, any Defendant or the successor of any Defendant has done any of the following: (1) violated the terms of this Agreement; (2) adopted, implemented, or enforced against any Plaintiff or Club member any new rule, regulation, policy, practice, or procedure (collectively "New Rule") that is more restrictive of student expressive or associational activities than the corresponding rule, regulation, policy, practice, or procedure described in Paragraphs Five through Eight of this Agreement (herein referred to as a "More Restrictive New Rule"); (3) adopted, implemented, or enforced against any Plaintiff or any Club member any New Rule restricting student expressive or associational activities, which New Rule is unconstitutional or otherwise violates federal or state law (herein referred to as an "Unlawful New Rule"), (4) implemented, enforced, or applied any of the rules, regulations, policies, practices, or procedures described in Paragraphs Five through Eight of this Agreement in a manner that discriminates against Plaintiffs or any Club member based on the expressive content of speech at meetings of the Club or based on the actual or perceived sexual orientation of any Club member; or (5) otherwise violated any Plaintiff's or any Club member's expressive or associational rights with respect to Club meetings or activities under the Equal Access Act or the First or Fourteenth Amendment to the United States Constitution, or other federal or state law. Nothing in the foregoing shall be construed to require Plaintiffs to bring a proceeding relating to the conduct described in Paragraphs Four (C)(3)-(5) before an arbitrator, rather than a court, in the first instance. The Stipulation and Request for Dismissal and accompanying [Proposed] Order Thereon shall contain a provision relating to costs and attorneys' fees arising out of the Lawsuit that includes language that is identical to the foregoing.

(D)     The Stipulation and Request for Dismissal and [Proposed] Order Thereon shall further provide that the time in which any Plaintiff may apply to the District Court for recovery of costs and attorneys' fees in connection with the Lawsuit is tolled and extended to 30 calendar days after an arbitration award in favor of any Plaintiff or any Club member is confirmed and a final judgment in favor of any Plaintiff or any Club member is entered upon a finding or declaration that

4

CONFIDENTIAL SETTLEMENT COMMUNICATION

any Defendant or the successor of any Defendant has, within three (3) years of the Effective Date of this agreement performed any of the acts described in the Paragraphs Four (C)(1) – (5) of this Agreement.

(E)     Defendants agree not to challenge Plaintiffs' right to apply to the District Court for recovery of attorneys' fees and costs arising out of the Lawsuit pursuant to Title 42 United States Code Section 1983 or Section 1988, as allowed under Paragraphs Four, Nine, and Eighteen of this Agreement, but Defendants retain the right to challenge Plaintiffs' entitlement to recover any costs or fees under 42 United States Code Section 1983 or Section 1988 and retain the right to challenge the amount of fees or costs sought by Plaintiffs. The Stipulation and Request for Dismissal and accompanying [Proposed] Order Thereon shall contain a provision relating to costs and attorneys' fees arising out of the Lawsuit that includes language that is identical to the foregoing.

(F)     Refusal by Plaintiffs or Defendants to sign the Stipulation and Request for Dismissal of the Lawsuit as set forth above shall terminate the obligations of the parties under this Agreement and render this Agreement null and void. In addition, if the Court declines to enter an Order adopting the [Proposed] Order described in this Paragraph Four, the Court's action shall terminate the obligations of the parties under this Agreement and render this Agreement null and void.

### FIVE:     MAINTENANCE OF A LIMITED OPEN FORUM

Defendants contemplate that for a period of at least three (3) years following the Effective Date of this Agreement, Defendants shall not close the limited open forum that currently exists at the School by denying to noncurriculum-related student groups the right to meet on campus during noninstructional time or by otherwise limiting the rights and opportunities in the limited open forum described in Paragraph Three above. In the event that any Defendant or the successor of any Defendant wholly or partially closes the limited open forum at the School during this time period, any Plaintiff or any member of the Club shall be entitled to a declaration and award from the Arbitrator that such Defendant or such Defendant's successor has adopted, implemented, or enforced a More Restrictive New Rule as defined in Paragraph Four (C)(2) of this Agreement.

### SIX:     DISCUSSIONS AT MEETINGS OF STUDENT CLUBS

(A)     Defendants contemplate that the Defendant Board will, prior to this Agreement becoming effective, adopt a rule applicable to all student clubs in the District prohibiting "discussion of sexual activity" during any student club meeting and providing that all student club faculty advisors shall ensure compliance with and enforce this rule in a uniform manner at any and all meetings of all student clubs. If such rule is adopted, this Agreement shall not become effective unless such rule also provides as follows:  (1) in no event shall any conduct of one or more students in violating the rule be a basis for restricting the rights and opportunities of other club members who have not violated the rule, including but not limited to the right to continue conducting or attending meetings of any student club including the student club in which the violation(s) occurred, (2) for purposes of this rule and any Administrative Regulations or Board Policies implementing this rule, "discussion of sexual activity" shall mean an explicit discussion of sex acts or sexual organs; (3) the

CONFIDENTIAL SETTLEMENT COMMUNICATION

term "discussion of sexual activity" shall not be interpreted to include discussion promoting understanding and acceptance of individuals of different sexual orientations, discussion concerning discrimination or harassment on the basis of sexual orientation, or discussions in which a student openly identifies himself or herself as lesbian, gay, bisexual, transgendered, heterosexual, or questioning, (4) the rule shall not be interpreted to prevent any club or its members from taking part in or discussing community events, such as fundraising walks relating to breast cancer or AIDS.

(B)     Nothing in this Agreement or this paragraph shall be construed to limit the Authority of the District, the School or their agents and employees to enforce uniformly any existing Board Policy or Administrative Regulation regarding the maintenance of an orderly school environment, protection of the rights, safety, health, or well being of students or faculty, or prohibiting obscene or pornographic conduct or material. Plaintiffs and Defendants agree that the current Constitution and Mission Statement of the Club do not encompass topics that fall within the foregoing definition of "discussion of sexual activity" and that no such discussions of sexual activity have taken place at Club meetings to date.

(C)     This Agreement shall not become effective unless the contemplated amendment is adopted in the manner described in Paragraph Six (A) above or in a manner less restrictive of student participation in student clubs, or unless the Board determines not to adopt any rule relating to discussions at meetings of student clubs. For three (3) years following the Effective Date of this Agreement, except as provided for in Paragraphs Four (C)-(E), Nine, and Eighteen of this Agreement, Plaintiffs agree not to bring a legal proceeding challenging the validity of the rule described in Paragraph Six (A), provided that the rule is adopted by the Board as set forth above

## SEVEN:     GRADE POINT AVERAGE REQUIREMENT

Defendants contemplate that the Defendant Board will, prior to this Agreement becoming effective, amend the current Board Policy 6145(a) and Administrative Regulation 6145(a) regarding "Extracurricular and Cocurricular Activities" to apply prospectively to participation in all student clubs in the District. It is contemplated that the amended policy and regulation will require any student in the District who desires to be a member of a student club to achieve a grade point average of at least 2.0  This Agreement shall not become effective unless such anticipated amendment also provides as follows: During the first academic quarter of the 2000-2001 school year, any student wishing to attend a meeting of any student club will be permitted to do so regardless of the student's grade point average in any preceding quarter; if, at the end of that first (or any subsequent) quarter, the student has failed to achieve a 2 0 or higher grade point average, the student shall be placed on academic probation; a student on academic probation may continue to attend and participate in meetings of all student clubs; if the student achieves a 2.0 or higher grade point average at the end of the quarter during which the student is on academic probation, the student shall be removed from academic probation for the purpose of determining eligibility to participate in club meetings; if a student on academic probation fails to achieve a 2.0 or higher grade point average at the end of the quarter during which the student is on academic probation, the student shall be prohibited from participating in any student club; such prohibition shall be lifted when the student again achieves a

6

CONFIDENTIAL SETTLEMENT COMMUNICATION

2.0 or higher grade point average at the end of a subsequent quarter  For purposes of calculating a student's grade point average under the anticipated amendment to Board Policy 6145(a) and Administrative Regulation 6145(a), grades given in summer school classes may be substituted for grades in any class given during the preceding academic year  This Agreement shall not become effective unless the contemplated amendment is adopted in the manner described above or in a manner less restrictive of student participation in school clubs, or unless the Board determines not to adopt any rule relating to student grade point average requirements for participation in student clubs  For three (3) years following the Effective Date of this Agreement, except as provided for in Paragraphs Four (C)-(E), Nine, and Eighteen of this Agreement, Plaintiffs agree not to bring a legal proceeding challenging the validity of the rule described in this paragraph, provided that the rule is adopted by the Board as set forth above.

**EIGHT:**   **PARENTAL NOTICE**

(A)   Defendants contemplate that the Defendant Board will, prior to this Agreement becoming effective, amend current Board Policy and Administrative Regulations to require that each parent or legal guardian of each District student be sent a notice of all student clubs recognized at their student's high school. Defendants further contemplate that the District shall send such notice to parents and legal guardians concurrently and in the same packet with other high school registration materials regularly sent to parents and legal guardians at the beginning of each academic year, and that such notices will not be sent to parents or legal guardians in any other mailing or transmission separate and apart from such registration materials, nor in a separate envelope within the registration packet. Defendants further contemplate that the notice form, which is attached as Exhibit A to this Agreement, will list alphabetically and in a uniform manner all active student clubs at the pertinent high school, with the club name, a brief description of the club written or approved by the club itself, and the name of the club's advisor. Defendants further contemplate that the notice will (1) describe the purpose of the Club in the following manner, which Plaintiffs agree is acceptable to the Club: "To promote understanding and acceptance of gay and straight students and to provide a safe forum for discussion of issues relating to sexual orientation discrimination and homophobia"; (2) without drawing attention to any particular club, advise the parent or legal guardian of his or her right to inform the school of any student club that the parent or legal guardian does not wish to permit his or her student to participate in or attend the meetings of; (3) without drawing attention to any particular club, advise the parent or legal guardian that he or she is presumed to consent to his or her student's participation in any of the student clubs listed on the notice if the school does not receive written notice of a parent's request that his or her child not participate in any particular club, (4) include the prefatory language set forth in the notice that is attached as Exhibit A, and no other prefatory language, (5) include a form at the end of the list of clubs, which is formatted in the manner set forth in Exhibit A and in no other format; (6) be printed on plain, white paper, or such other paper stock as is used for the majority of materials sent to parents as part of the regular school registration packet.

(B)   This Agreement shall not become effective unless the contemplated amendment is adopted in the manner described in Paragraph Eight (A) above or in a manner less restrictive of

CONFIDENTIAL SETTLEMENT COMMUNICATION

student participation in school clubs, or unless the Board determines not to adopt any rule relating to parental notice of student clubs   In particular, this Agreement shall not become effective if the Board requires or requests affirmative parental consent prior to permitting students to participate in any student club or if the form for providing notice to parents and legal guardians differs from the form provided in Exhibit A or from the specifications set forth in Paragraph Eight (A)   The foregoing shall not be construed to prevent the District from annually modifying the list of clubs and club advisors on the form to ensure that the information provided is accurate, and such modification shall not provide a basis for seeking from an arbitrator a declaration that defendants have implemented a More Restrictive New Rule as defined by Paragraph Four (C)(2) above.  For three (3) years following the Effective Date of this Agreement, except as provided for in Paragraphs Four (C)-(E), Nine, and Eighteen of this Agreement, Plaintiffs agree not to bring a legal proceeding challenging the validity of the rule described in this Paragraph Eight, provided that the rule is adopted by the Board as set forth above.

## NINE:        PLAINTIFFS' RIGHT TO BRING FUTURE CHALLENGES

(A)      Plaintiffs and Club members retain, *inter alia*, the following rights  (1) to challenge the application, administration, or enforcement of the rules, regulations, policies, practices, or procedures described in Paragraphs Five through Eight above to any Plaintiff or any Club member in the event that any of those rules, regulations, policies, practices, or procedures is not applied, administered, or enforced uniformly with respect to all students or all student clubs or is applied, administered or enforced in a discriminatory manner based on the expressive content of speech at meetings of the Club or based on the actual or perceived sexual orientation of any Plaintiff or any Club member or any other discriminatory reason; (2) to challenge the adoption, implementation, enforcement, or application, of any "More Restrictive New Rule" or any "Unlawful New Rule" as defined in Paragraph Four (C)(2) and (C)(3); (3) to bring future claims in court under the federal Equal Access Act, the United States Constitution, Title 42 United States Code Section 1983, or other federal or state law relating to conduct occurring after the Effective Date of this Agreement; (4) to seek attorneys' fees and costs arising out of the Lawsuit and any new arbitration proceeding as provided in Paragraphs Four, Nine (C) and Eighteen of this Agreement, and (5) to seek attorneys' fees and costs arising out of any new action as provided in Paragraph Three.  The parties agree that any action challenging the lawfulness, validity, enforceability, or constitutionality of any alleged New Rule or asserting claims under the federal Equal Access Act, the United States Constitution, Title 42 United States Code Section 1983, or other federal or state law is not "an action on a contract" for purposes of California Civil Code Section 1717

(B)      If any Defendant or the successor of any Defendant at any time within three (3) years of the Effective Date of this Agreement adopts, implements, applies, or enforces any More Restrictive New Rule or Unlawful New Rule as defined in Paragraph Four (C)(2) and (3) above, Plaintiffs or any Club member shall be entitled to challenge any such New Rule in court and/or to seek a declaration in arbitration that such New Rule as adopted, enforced, or implemented is a More Restrictive New Rule as that term is defined by Paragraph Four (C)(2).  For purposes of this Agreement, a More Restrictive New Rule shall include any New Rule that imposes any additional

8

CONFIDENTIAL SETTLEMENT COMMUNICATION

burden on student club participation beyond those provided in Paragraphs Five through Eight of this Agreement. Such burdens include but are not limited to the following:

      (1)   requiring or requesting parental consent for students to participate in school clubs;

      (2)   using any notice form other than the one described in Paragraph Eight above or one expressly agreed to in writing by all parties or their successors;

      (3)   imposing or enforcing a grade point average requirement higher than 2.0;

      (4)   imposing or enforcing a grade point average requirement in a manner other than the manner provided for in Paragraph Seven above;

      (5)   imposing more substantial burdens than those described in Paragraph Seven above for gaining reinstatement in student clubs after being barred from such clubs due to failure to meet academic performance requirements;

      (6)   closing in whole or in part the limited open forum that exists at the School, by, for example, denying student groups or their members the rights and opportunities listed in Paragraph Three of this Agreement, and

      (7)   imposing or enforcing restrictions on discussions in student club meetings or in connection with student club activities that are broader or more vague than those described in Paragraph Six above.

The examples listed above are offered for purposes of illustration only and do not represent an exclusive list of all potential New Rules that are more restrictive of student expressive or associational activities than the rules described in Paragraphs Five through Eight of this Agreement.

    (C)   In the event that any Plaintiff or any Club Member brings an action in court challenging any violation of law or other conduct described in Paragraphs Three or Four (C)(3)-(5), the statute of limitations relating to initiating any arbitration proceeding for purposes of recovering attorneys' fees and costs arising out of this Lawsuit pursuant to Paragraphs Four (C)-(E) and Eighteen shall be tolled until 30 days after a final judgment has been entered in such court action. In such event, Defendants agree not to argue that the doctrines of res judicata, collateral estoppel, election of remedies, or any other doctrine or theory relating to the effect of the prior court action restricts Plaintiffs' or any Club member's ability to recover attorneys' fees or costs arising out of this Lawsuit pursuant to Paragraphs Four (C) – (E) and Eighteen of this Agreement. In addition, a finding, holding, or other determination by a court that any Defendant has violated any Plaintiff's or any Club member's rights under the Equal Access Act, Title 42 United States Code Section 1983, the United States Constitution, other federal law, or the Constitution or laws of the State of California shall be conclusive and binding upon an Arbitrator in any subsequent or concurrent proceeding

**TEN:**      **JOINT PRESS RELEASE**

    Plaintiffs and Defendants agree that on the Effective Date of this Agreement, the parties shall issue a joint press release that states as follows: "The Orange Unified School District and the plaintiffs in the lawsuit challenging the District's denial of the student club application of the Gay-

CONFIDENTIAL SETTLEMENT COMMUNICATION

Straight Alliance Club of El Modena High School have reached a settlement agreement. The settlement represents a resolution of this dispute that respects the rights of both the students and the District   Pursuant to the settlement agreement, the District approves the application of the Gay-Straight Alliance Club and will allow the Club access to school facilities equal to that accorded all other student clubs   Both sides called the settlement agreement a fair resolution of the controversy recognizing the rights and responsibilities of the District and its students."

Nothing in this Agreement in any way restricts the rights of the parties or their representatives or attorneys to issue further press releases or in any other way to speak publicly about this Agreement, the Lawsuit or any other matter at any time

### ELEVEN:          NON-ADMISSION OF LIABILITY OR WRONGDOING

This Agreement shall not in any way be construed as an admission that the Defendants have any liability to or acted wrongfully in any way with respect to Plaintiffs or any other person.

### TWELVE:          RELEASE

(A)      In consideration of the promises and agreements set forth in this Agreement, Plaintiffs knowingly and voluntarily waive and release all rights and claims, known and unknown, that Plaintiffs may have against Defendants or any of their successors, officers, members, administrators, managers, employees, agents, attorneys or representatives, from the beginning of time to the date Plaintiffs sign this Agreement, related to or arising out of the Lawsuit or the allegations of the Complaint or Amended Complaint in the Lawsuit.

(B)      In consideration of the promises and agreements set forth in this Agreement, each Defendant knowingly and voluntarily waives and releases all rights and claims, known and unknown, that such Defendant may have against Plaintiffs or any of their successors, officers, members, agents, attorneys or representatives, from the beginning of time to the date each Defendant signs this Agreement or it is signed on his or her behalf, related to or arising out of the Lawsuit or the allegations of the Complaint or Amended Complaint in the Lawsuit

(C)      In the event that any Defendant who does not personally sign this Agreement on his or her own behalf, or the successor of such a Defendant (collectively a "Non-Signatory Defendant"), later contends that he or she is not bound by this Agreement or the release of claims contained in Paragraphs Twelve or Thirteen of this Agreement, then· (1) the other Defendants in their official capacity and their successors shall jointly and severally indemnify and hold harmless Plaintiffs and any of their successors, officers, members, agents, attorneys and representatives for any judgment or damages arising out of any claim brought by a Non-Signatory Defendant and shall jointly and severally be liable for paying all attorneys' fees and costs of Plaintiffs or any of their successors, officers, members, agents, attorneys or representatives in defending against such a claim by such Non-Signatory Defendant, and (2) any Plaintiff and any Club member shall be entitled to rescind his, her, or its release of claims against all Defendants and to reinstate the Lawsuit against all Defendants.

CONFIDENTIAL SETTLEMENT COMMUNICATION

### THIRTEEN:          UNKNOWN CLAIMS

Each party to this Agreement acknowledges and agrees that, as a condition of this Agreement, each party expressly releases all rights and claims that such party knows about as well as those such party may not know about arising out of conduct preceding the date this Agreement is signed   Each party expressly waives all rights under §1542 of the Civil Code of the State of California, which reads as follows.

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor "

Notwithstanding the provisions of §1542, and for the purpose of implementing a full and complete release and discharge of the parties and others released herein, each party expressly acknowledges that this Agreement is intended to include and does include in its effect, without limitation, all claims arising out of conduct preceding the date of this Agreement which each party does not know or suspect to exist in his or her favor against the opposing parties or others released herein at the time each party signed this Agreement or had this Agreement signed on his or her behalf, and that this settlement expressly contemplates the extinguishment of all such claims arising out of or related to the allegations of the Complaint or the Amended Complaint in the Lawsuit.

### FOURTEEN:      OWNERSHIP OF CLAIMS

Each party represents and agrees that he or she has not assigned or transferred, or attempted to assign or transfer, to any person or entity, any of the claims that the party is releasing in this Agreement

### FIFTEEN:          NO REPRESENTATIONS

Each party represents and agrees that no promises, statements or inducements have been made to the party that caused the party to sign this Agreement other than those expressly stated in this Agreement

### SIXTEEN:          REPRESENTATION BY COUNSEL

All parties to this Agreement were represented by counsel in the negotiation and execution of this Agreement.

### SEVENTEEN:       SUCCESSORS

This Agreement shall be binding upon Plaintiffs and their representatives or successors, including future members of the Club, and upon Defendants, their representatives, employees, and successors, including future Boards and Board members and officers, and shall inure to the benefit

CONFIDENTIAL SETTLEMENT COMMUNICATION

of the other parties and/or their members, representatives, employees, and successors. The provisions of this Agreement shall not bind District students or future students who are neither Plaintiffs nor members of the Club. Defendants reserve the right to argue that any Club member who voluntarily ceases to be actively enrolled at the School lacks standing to bring any claim, action, or proceeding under this Agreement after the date on which he or she voluntarily ceases to be actively enrolled at the School. Plaintiffs reserve the right to argue that such persons maintain such standing

### EIGHTEEN:        ARBITRATION

A.     Dispute Resolution  Unless the parties otherwise agree in writing, any controversy or claim arising out of or with reference to this Agreement, which controversy or claim does not also arise out of an alleged violation of federal or state law(s) existing independently of this Agreement (a "Disputed Matter") shall be settled solely in accordance with the dispute resolution procedures detailed in Exhibit B hereto. For the avoidance of doubt, and by way of example only, any claim for violation of the Equal Access Act, Title 42 United States Code Section 1983, the United States Constitution, the California Constitution or other federal or state civil rights law is not a Disputed Matter for purposes of this Agreement, and may be brought in court as may any other claim alleging a violation of law the requirements of which exist without regard to this Agreement.

B     Costs and Attorneys' Fees. In any arbitration proceeding in which any Plaintiff or any Club member obtains an award in his, her or its favor or a declaration that any Defendant has adopted a More Restrictive New Rule or an Unlawful New Rule, the arbitrator, in his or her discretion, may award such Plaintiff(s) or Club member(s) a reasonable attorneys' fee for legal services provided in connection with the arbitration  Plaintiff(s) may also seek attorneys' fees and costs in connection with the Lawsuit pursuant to Paragraphs Four and Nine above. In no event shall any Defendant be entitled to recover attorneys' fees or costs under this Agreement. Pursuant to Paragraph 2 of Exhibit B to this Agreement, all costs of arbitration will be paid by the District

### NINETEEN:        GOVERNING LAW, FORUM AND VALIDITY

This Agreement shall be governed by and construed in accordance with the laws of the State of California except where federal law applies. Arbitration of disputes under this Agreement shall be conducted in the County of Los Angeles or the County of Orange, California. The various components of this Agreement are a complete integrated package, each dependent on the other  In the event that any provision of this Agreement is declared illegal, invalid, or unenforceable, Plaintiffs shall have a right to rescind this Agreement in its entirety and to have the Lawsuit and the Court's Order of February 4, 2000 granting plaintiffs a preliminary injunction reinstated.

### TWENTY        VOLUNTARY AGREEMENT

Each party to this Agreement acknowledges that the party has reviewed the Agreement with legal counsel, that the party has carefully read and fully understands all of the provisions of this Agreement, that the party has been given a reasonable period of time to consider signing this

CONFIDENTIAL SETTLEMENT COMMUNICATION

Agreement, and that the party is voluntarily signing this Agreement.

### TWENTY-ONE:    COOPERATION AND FURTHER NECESSARY ACTION

Each party agrees, without further consideration, to sign and/or cause to be signed, and to deliver to the opposing party, any other documents and to take any other action as may be necessary to fulfill the party's obligations under this Agreement

### TWENTY-TWO:    PROPER CONSTRUCTION

(a)    The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties.

(b)    As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

(c)    The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

(d)    This Agreement may be executed in counterparts.

(e)    The use of the pronouns he, she, or it shall apply regardless of the gender of the entity or person referred to.

(f)    This Agreement was drafted with full participation by counsel for all parties. Accordingly, if there is an ambiguity in this Agreement, it should not be resolved against any particular party, but rather should be resolved by a fair reading of what the Agreement was intended to provide.

### TWENTY-THREE: AUTHORITY

Each party to this Agreement represents and promises that such party has full legal authority and capacity to sign this Agreement for himself or herself and/or for the entity or individual on whose behalf such party is signing

### TWENTY-FOUR:    ENTIRE AGREEMENT

This Agreement is the entire agreement between Plaintiffs and Defendants and fully supersedes any and all prior agreements or understandings between the parties pertaining to its subject matter. This Agreement may not be modified or amended except by a writing signed by all parties (or their successors) hereto.

CONFIDENTIAL SETTLEMENT COMMUNICATION

IN WITNESS WHEREOF, each party has executed this Agreement below

CONFIDENTIAL SETTLEMENT COMMUNICATION

**PLEASE READ CAREFULLY. THIS SETTLEMENT AGREEMENT AND RELEASE INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

PLAINTIFFS

ANTHONY COLIN

_____

JESSIE COLIN, Mother and guardian of Anthony Colin

_____

GAY-STRAIGHT ALLIANCE CLUB

By _____
Club-Designated Representative Anthony Colin

DEFENDANTS.

ORANGE UNIFIED SCHOOL DISTRICT

By: _____
Superintendent Barbara Van Otterloo, in her official capacity

ORANGE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, and BOARD MEMBERS LINDA DAVIS, MARTIN JACOBSON, KATHY WARD, TERRI SARGEANT, MAUREEN ASCHOFF, WILLIAM LEWIS, and ROBERT VIVIANO, in their respective official capacities

By _____
Board Clerk Kathy Ward

BARBARA VAN OTTERLOO, Superintendent, in her official capacity

_____

NANCY MURRAY, Principal El Modena High School, in her official capacity

_____

15

CONFIDENTIAL SETTLEMENT COMMUNICATION

**PLEASE READ CAREFULLY. THIS SETTLEMENT AGREEMENT AND RELEASE INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

PLAINTIFFS:                    ANTHONY COLIN

_____

JESSIE COLIN, Mother and guardian of
Anthony Colin

_____

GAY-STRAIGHT ALLIANCE CLUB

By:_____
     Club-Designated Representative Anthony Colin

DEFENDANTS·                   ORANGE UNIFIED SCHOOL DISTRICT

By _Barbara Van Otterloo_
     Superintendent Barbara Van Otterloo, in her official
     capacity

ORANGE UNIFIED SCHOOL DISTRICT BOARD OF
EDUCATION, and BOARD MEMBERS LINDA DAVIS,
MARTIN JACOBSON, KATHY WARD, TERRI
SARGEANT, MAUREEN ASCHOFF, WILLIAM LEWIS,
and ROBERT VIVIANO, in their respective official
capacities

By:_Kathy Ward_
     Board Clerk Kathy Ward

BARBARA VAN OTTERLOO, Superintendent, in her
official capacity

_Barbara Van Otterloo_

NANCY MURRAY, Principal El Modena High School, in
her official capacity

_Nancy Murray_

15

**EXHIBIT A**

## NOTICE OF STUDENT CLUBS AT EL MODENA HIGH SCHOOL AND INFORMED CONSENT TO STUDENT PARTICIPATION

Dear Parent(s)/Guardian(s) of El Modena student(s),

As part of its educational mission for high school students, Orange Unified School District allows both curriculum- and noncurriculum-related student clubs to meet at El Modena High School during noninstructional hours (e g. before classes begin, during lunch period, after classes end)  The Governing Board believes that curriculum- and noncurriculum-related student organizations can have an important place in students' lives  Besides extending and reinforcing the instructional program, such groups can give students practice in democratic self-government and civil social discourse, as well as providing social, intellectual, and recreational opportunities

Noncurriculum-related student clubs and the viewpoints and speech expressed at meetings of such clubs do not necessarily reflect the views of the Orange Unified School District or the Board of Education.  The District and the Board are not affiliated with noncurriculum-related student clubs and do not direct, support, promote, endorse or otherwise sponsor noncurriculum-related student clubs, nor any speech or viewpoint expressed at the meetings of any such club  The District and El Modena High School merely provide a limited open forum for such clubs to form and meet, in compliance with District policies and regulations, as well as federal law

If eligible, your high school student will have the opportunity to join one or more such clubs and to attend and participate in the meetings of any club that he or she joins  In order to be eligible to participate in student clubs, your student must  (1) be enrolled in and actively attending El Modena High School; and (2) maintain a minimum grade point average under District policies applicable to cocurricular and extracurricular activities.

The student clubs available at El Modena High School for the 2000-2001 school year are as follow

       Academic Decathalon
       Advisor· Mr. Veit
       Purpose: To _____

       Art Council
       Advisor· Mrs. Banning
       Purpose: To _____

       California Scholarship Federation
       Advisor  Dr. Buford
       Purpose. To _____

Christian Club
Advisor: Mr Torkelson
Purpose· To _____

Chess Club
Advisor. Ms Spicer
Purpose  To _____

CMAB (Cinema & Music Appreciation Bunch)
Advisor. Mr Veit
Purpose  To _____

Earth Club
Advisor  Mrs. Esperanza
Purpose. To _____

Eighties Club
Advisor  Mr Finn
Purpose: To _____

French/Italian Club
Advisor· Mrs. Notarnicola
Purpose: To _____

Gay-Straight Alliance Club (G S A.)
Advisor· Mrs Herde
Purpose  To promote understanding and acceptance of gay and straight students and to
provide a safe forum for discussion of issues relating to sexual orientation discrimination
and homophobia.

Girls' League
Advisor: Mrs Noble
Purpose. To _____

Illumination (Literary Magazine)
Advisor· Ms Spicer
Purpose: To _____

Instrumental Music & Tall Flags
Advisor· Mr. Yamamoto
Purpose: To _____

Journalism
Advisor  Mrs  Esperanza
Purpose  To _____

Koinonia
Advisor  Mrs  Monteros-Garcia
Purpose  To _____

MECHA
Advisor· Mrs  Monteros-Garcia
Purpose: To _____

Mock Trial
Advisor: Mr. Veit
Purpose: To _____

National Art Honor Society
Advisor: Mrs. Banning
Purpose: To _____

National Honor Society
Advisor· Mrs. Avitia
Purpose: To _____

On Track
Advisor: Mrs. Rebecca Martinez
Purpose: To _____

Peer Assistance Leadership (PAL)
Advisor: Mrs  Hitchens
Purpose: To _____

Pep Squad
Advisor: Mrs. Rebecca Martinez
Purpose: To _____

Photo Club
Advisor: Mr. Benoit
Purpose  To _____

Red Cross/Key Club
Advisor: Mrs. Howard
Purpose: To _____

Science Olympiad
Advisor: Mr. Colins & Mrs  Lingle
Purpose   To _____

Spanish Club
Advisor   Mrs  Lopez
Purpose   To _____

Thespians (Drama)
Advisor:  Mrs. Herde
Purpose   To _____

Vocal Music
Advisor:  Mrs. Freiman
Purpose:  To _____

Yearbook
Advisor.  Mr. Zubrin
Purpose:  To _____

If you do not wish to permit your student to participate in or attend the meetings of any of the clubs listed above, please notify the Principal of your student's school in writing  If you do not notify the Principal of your student's school in writing to the contrary, the District will presume that you consent to your student's participation in or attendance at the meetings of any of the clubs listed above.

Principal Nancy Murray
El Modena High School
3920 Spring Street
Orange, CA 92669

    Please do not allow my student, _____, to participate in or attend the meetings of the following clubs·

_____

_____

_____

DATE: _____       SIGNATURE. _____

## EXHIBIT B

## ARBITRATION PROVISIONS

1    Rules, Jurisdiction, Opportunity to Cure    Any Disputed Matter (as defined in the Agreement to which this exhibit is attached) shall be resolved by arbitration, which must be conducted in the County of Los Angeles, California, or the County of Orange, California, and, except as herein specifically stated, in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA Rules") then in effect (but not under the auspices of the AAA), and subject to the provisions of Title 9 of Part 3 of the California Code of Civil Procedure or any successor statute ("Title 9")   To the extent the AAA Rules conflict with, or are supplemented by, the provisions of Title 9, the provisions of Title 9 shall govern and be applicable.  However, in all events the arbitration provisions provided herein shall govern over any conflicting rules that may now or hereafter be contained in either the AAA Rules or Title 9  An order confirming any judgment upon an award rendered by the arbitrator may be entered in the United States District Court for the Central District of California, which is the Court that, pursuant to the parties' anticipated stipulated dismissal, will retain jurisdiction over the Agreement, including the power to enforce an award of the Arbitrator   The parties hereby submit to the in personam jurisdiction of the United States District Court for the Central District of California for purposes of confirming any such award and/or entering judgment thereon.  The arbitrator shall have the authority to grant any equitable, declaratory, or legal relief that would be available in any judicial proceeding instituted to resolve a Disputed Matter   The parties hereto waive any and all objections that they may have as to jurisdiction or venue in the above court.  Prior to initiating any arbitration under the Agreement and the provisions herein, the party asserting the existence of a Disputed Matter or counsel for the party asserting the existence of a Disputed Matter shall contact counsel for the other party in writing and shall notify counsel for the other party of the nature of the alleged Disputed Matter and a resolution of the Disputed Matter that would be acceptable to the party asserting the existence of a Disputed Matter   The other party shall then have five business days following receipt of such written notice to attempt to cure or resolve the alleged Disputed Matter.  After the fifth business day following receipt of such written notice, if the alleged Disputed Matter has not been resolved to the satisfaction of the party asserting the existence of a Disputed Matter, that party may initiate an arbitration proceeding as provided herein.

2.    Costs and Compensation of Arbitrator    Any such arbitration shall be conducted before one arbitrator who shall be compensated for his or her services at his or her usual and customary rates   The District shall pay the full cost of any arbitration conducted pursuant to this Agreement, including compensation of the arbitrator, costs of transcripts, and all other expenses of the arbitration proceedings.

3    Selection of Arbitrator.  Within ten (10) calendar days of notice by a party seeking arbitration ("Arbitration Claimant") under this provision, the other party (the "Arbitration Respondent") shall select one of the following pre-approved retired judges as the Arbitrator.  If that retired judge is not able to serve, then the Arbitration Claimant shall select another retired judge from the list to serve as the Arbitrator   If that retired judge is also not able to serve as an Arbitrator, then the parties shall repeat the foregoing process until an Arbitrator is selected.

Former California Court of Appeal Judge Steve Stone
Former California Superior Court Judge Robert O'Brien
Former California Superior Court Judge George M Dell
Former California Superior Court Judge Sara Kleban Radin
Former California Superior Court Judge Enrique Romero
Former California Superior Court Judge David M Rothman

If none of the pre-approved retired judges is available for retention as an arbitrator, then, within ten (10) calendar days of the date that the parties receive notice of such unavailability, the Arbitration Claimant shall make a request of the American Arbitration Association ("AAA") to provide a list of three retired judges from among which an Arbitrator will be selected in following manner·

(a) The Arbitration Claimant shall request that the AAA, immediately after receiving the Arbitration Claimant's request, send simultaneously to each party to the dispute an identical list of three names of retired judges chosen from the AAA's panel. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

(b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 10 calendar days from the transmittal date in which to strike one of the names, number the remaining names in order of preference, and return the list to the AAA  If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party  From among the persons who have been approved or deemed acceptable on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve.  If acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, then the foregoing procedure shall be repeated one additional time  If acceptable arbitrators are still unable to act, or if for any other reason the appointment cannot be made from the submitted lists, then the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

4   Evidence.  All testimony of witnesses at any arbitration proceeding held pursuant to these provisions shall be taken under oath, and under the rules of evidence as set forth under the Evidence Code of California and judicial interpretations thereunder.

5   Discovery.  The parties shall be entitled to conduct discovery proceedings in accordance with the provisions of Section 1283.05 of the California Code of Civil Procedure, except that each side shall, as of right, be entitled to take the depositions of five witnesses.

6   Burden of Proof; Basis of Decision.  For any claim submitted to arbitration, the burden of proof shall be as it would be if the claim were litigated in a judicial proceeding except where otherwise specifically provided in the Agreement to which this is attached, and, except where federal law applies, the decision shall be based on the application of California law (as

307667                                    - 2 -

determined from statutes, court decisions, and other recognized authorities) to the facts found by the arbitrator.

7   Judgment.  Upon the conclusion of any arbitration proceedings hereunder, the arbitrator shall render findings of fact and conclusions of law and a written opinion setting forth the basis and reasons for any decision reached and shall deliver such documents to each party to the Agreement along with a signed copy of the award in accordance with Section 1283.6 of Title 9

8.   Terms of Arbitration   The arbitrator chosen in accordance with these provisions shall not have the power to alter, amend or otherwise affect the terms of these arbitration provisions or the provisions of the Agreement

9.   Exclusive Remedy.  Except as specifically provided in this exhibit or in the Agreement, arbitration shall be the sole and exclusive remedy of the parties for any Disputed Matter.

BP 6145(a)

Instruction

## Extracurricular and Cocurricular Activities

The Governing Board recognizes that extracurricular and cocurricular activities enrich the educational and social development and experiences of students. The district shall encourage and support student participation in extra/cocurricular activities and curriculum- and noncurriculum-related student clubs without compromising the integrity and purpose of the educational program.

No student shall be prohibited from participating in extra/cocurricular activities related to the educational program because of inability to pay fees associated with the activity.

The Superintendent or designee shall ensure that disabled students have access, to the extent possible, to extracurricular and cocurricular activities, student organizations and school-related social events, regardless of the severity or nature of their disabilities.  (cf. 0410 - Nondiscrimination in District Programs & Activities)

Extra/cocurricular activities shall be supervised by district employees whenever they are conducted under the name of the district   (cf. 4127/1227/4327 - Temporary Athletic Team Coaches)

**Eligibility Requirements**

To participate in extra/cocurricular activities, and curriculum- and noncurriculum-related student clubs students in grades 7 through 12 must demonstrate satisfactory educational progress in meeting the requirements for graduation pursuant to Administrative Regulation 6145 implementing this policy.  (cf. 6146 1 - High School Graduation Requirements)

Students must maintain minimum progress towards graduation to meet eligibility requirements

The Board desires to balance the academic needs of students with the benefits they receive from participating in school activities   In implementing this policy, the Superintendent or designee shall help ineligible students regain eligibility   (cf  6164.5 - Student Study Teams)

The Superintendent or designee may revoke a student's eligibility for participation in extra/cocurricular activities when a student's poor citizenship is serious enough to warrant loss of this privilege.  (cf. 5144 - Discipline)

The Board shall annually review this policy   (cf. 6145.2 - Interscholastic Competition)(cf. 6164.2 - Identification of Individuals with Exceptional Needs)

(Legal Reference next page)

BP 6145(b)

Legal Reference:
    EDUCATION CODE
    35160 5         District policy rules and regulations; requirements, matters subject to regulation
    35179          Interscholastic athletics, associations or consortia
    48930-48938    Student organizations
    ADMINISTRATIVE CODE, TITLE 5
    350           Fees not permitted
    5531           Supervision of extracurricular activities of pupils
    Hartzell v. Connell, 84 Daily Journal D A R. 1417 (April 20, 1984)
Management Resources
    LEGAL ADVISORY
    1001.90        Access to School-Related Activities and Events by Disabled Students, LO. 3-90
    0409.87        Requirements for Pupil Participation in Extracurricular and Cocurricular Activities, AB 2613, CIL 86/87-11

ORANGE UNIFIED SCHOOL DISTRICT
Orange, California

Adopted· (7-88) (12-92) 9-00

AR 6145(a)

Instruction

## Extracurricular and Cocurricular Activities

Extracurricular activities are those programs that have all of the following characteristics:

1.      The program is supervised or financed by the school district.

2.      Students participating in the program represent the school district

3.      Students exercise some degree of freedom in either the selection or planning of the program.

4.      The program includes both preparation for performance and performance before an audience or spectators

Extracurricular activities are not part of the regular school curriculum, are not graded, do not offer credit and do not take place during classroom time  (E.C 35160 5)

Cocurricular activities are programs that may be associated with the curriculum in a regular classroom  (E C. 35160 5)

Any teacher-graded or required program or activity for a course which satisfies the entrance requirements for admission to the California State University or the University of California is not an extracurricular or cocurricular activity for purpose of this policy.  (E C. 36160.5)

The grade point average used to determine eligibility shall be based on grades of the previous grading period during which the student attended class at least a majority of the time  (E.C. 35160.5)

In the event a student finds that he/she is academically ineligible to participate in extra/cocurricular activities in the first quarter of the upcoming year, he/she may request that current summer school grades be added to the grades received in the spring quarter and that the total spring quarter and summer school grades be used to determine eligibility for the first quarter of the upcoming school year.

When students are simultaneously enrolled in college classes for which they receive credit toward high school graduation, their college grades shall be included in the computation of their grade point average.

Receiving an Incomplete shall have no effect on a student's academic eligibility as long as the resolution of the Incomplete would not lower his/her grade point average below 2.0.  If the resolution of an Incomplete could lower the student's grade point average to below 2.0, the student shall be considered ineligible until the Incomplete is removed and the grade point average determined

AR 6145(b)

**Probationary Period**

Probation of one semester or less may be authorized by the Superintendent or designee.

Students granted probationary eligibility must meet the required standards by the end of the probationary period to remain eligible for participation.

The principal or designee shall provide written notice to both the student and parent/guardian when a student is ineligible or placed on probation  He/she shall also consult with the student's teachers and suggest a program of remediation to improve the student's academic progress.

**Minimum Academic Standards**

To represent the school through participation in extra/cocurricular activities, a student must maintain a minimum grade average of "C" or better during the quarter immediately preceding the desired participation.

If less than a "C" average is achieved, the student will be on probation for one quarter  If the student achieves a "C" average or above during the probationary quarter, the student shall retain eligibility  If the student does not achieve a "C" average during the probationary period, the student shall be ineligible to participate in extra/cocurricular activities until the quarter immediately following the quarter in which the student maintains a "C" average or above

A "C" average is defined as a 2.0 grade point average based upon the following four (4) point grading scale:

> A = 4 0 points
> B = 3 0 points
> C = 2.0 points
> D = 1.0 points
> F =  0 points

In computing the grade point average (GPA) for purposes of this regulation, all courses undertaken by the student for which a final mark is recorded are to be included.  Incomplete grades will be disregarded in the initial calculation.  At the time when an incomplete grade is resolved, a recalculation will take place.  The GPA used to determine eligibility is the GPA for the previous quarter or semester **only** and not a cumulative GPA

For the purpose of computing eligibility at the high school level, the quarter grades will be used at the end of the first and third quarter.  At the end of the second and fourth quarter, the semester grades will be used to determine eligibility  The student must maintain a 2 0 GPA based upon a 4 0 grade point system  In addition, all students must have passed a minimum of four courses during the previous grading quarter to be eligible for extra/cocurricular activities.

For the purpose of computing eligibility at the middle school level, the quarter grades will be used at the end of each quarter. Passing four classes the previous quarter is not a requirement as long as the student has a 2.0 GPA based upon the 4 point system.

This regulation is not intended to lower academic requirements already in existence that exceed the minimum "C" average requirement.

Extra/cocurricular activities include, but are not limited to, the following:

1.      Athletic participants.

2.      ASB cabinet participants.

3.      Band/orchestra/flag team participants

4.      Choral/drama performing groups

5.      Drill team/pep squad members.

6       Academic decathlon

In extra/cocurricular activities connected with curriculum experiences in the regular classroom, such as band, drama, chorus, etc , the student may continue as a member of the class and earn a grade and credits, but would be ineligible to participate in an out-of-classroom activity, performance or competition. Students will not be penalized or have a course grade lowered because of ineligibility to participate in related extra-curricular activities.

In the event a student receives a GPA less than a 2.0, he/she shall be placed on academic probation for a period of one quarter

Students will be permitted a maximum of one quarter of probation at the middle school level and an additional quarter of probation at the high school level. The fourth quarter of the eighth grade will be used to determine eligibility for the fall quarter of the freshman year. At the conclusion of the probationary quarter, if the student has earned a 2.0 GPA or better, the student will resume eligibility.

Students in special education classes will meet the same general requirements as all other students; the exception would be those special education students whose academic progress is addressed in their Individual Education Plan (IEP)  Students enrolled in English as a Second Language Program (ESL) will meet the same general requirements as all other students, the exception would be those students who are making satisfactory progress in ESL but are temporarily unable to earn a "C" average.  In both cases, Special Education and English as a Second Language, the IEP Team or a school guidance committee shall be responsible for making the determination.

AR 6145(d)

The principal or designee shall maintain complete, current records of student eligibility to participate in extra/cocurricular activities.

<u>Eligibility for Participation in Student Clubs</u>

During the first academic quarter of the 2000-2001 school year, any student wishing to attend a meeting of any student club will be permitted to do so regardless of the student's grade point average in any preceding quarter. If, at the end of that quarter or any subsequent quarter, the student has failed to achieve a 2.0 or higher grade point average, the student shall be placed on academic probation. A student on academic probation may continue to attend and participate in meetings of all student clubs. If the student achieves a 2.0 or higher grade point average at the end of the quarter during which the student is on academic probation, the student shall be removed from academic probation for the purpose of determining eligibility to participate in student club meetings. If a student on academic probation fails to achieve a 2.0 or higher grade point average at the end of the quarter during which the student is on academic probation, the student shall be prohibited from participating in any student club; such prohibition shall be lifted when the student again achieves a 2.0 or higher grade point average at the end of a subsequent quarter.

The grade point average used to determine eligibility for participation in student clubs shall be based on grades of the previous quarter or applicable grading period during which the student attended class at least a majority of the time. (E C. 35160.5)

Beginning with the 2000-2001 school year, if a student finds that he/she is academically ineligible to participate in student club activities in the first quarter of the upcoming year, he/she may request that current summer school grades be added to the grades received in the spring quarter and that the total spring quarter and summer school grades be used to determine eligibility for the first quarter of the upcoming school year and that request will be honored. For purposes of calculating a student's grade point average under this Regulation 6145, grades given in summer school classes may be substituted for grades in any class teaching substantially the same subject matter as any class given during the preceding academic year. When students are simultaneously enrolled in college classes for which they receive credit toward high school graduation, their college grades shall be included in the computation of their grade point average.

**Probationary Period**

Students granted probationary eligibility must meet the required standards by the end of the probationary period to remain eligible for participation

The principal or designee shall provide written notice to both the student and parent/guardian when a student is ineligible or placed on probation. He/she shall also consult with the student's teachers and suggest a program of remediation to improve the student's academic progress.

AR 6145(e)

**Calculation of Grade Point Average**

After the first academic quarter of the 2000-2001 school year, to remain eligible for participation in student clubs as set forth in this Regulation, a student must maintain a minimum grade average of "C" or better during the quarter immediately preceding the desired participation.

A "C" average is defined as a 2.0 grade point average based upon the following four (4) point grading scale:

<div style="margin-left:2em">

A = 4 0 points
B = 3 0 points
C = 2 0 points
D = 1.0 points
F =    0 points

</div>

In computing the grade point average (GPA) for purposes of this regulation, all courses undertaken by the student for which a final mark is recorded are to be included  Incomplete grades will be disregarded in the initial calculation of GPA under this regulation  Receiving an Incomplete shall have no effect on a student's academic eligibility as long as the resolution of the Incomplete would not lower his/her grade point average below 2.0  If the resolution of an Incomplete could lower the student's grade point average to below 2.0, the student shall be considered ineligible until the Incomplete is removed and the grade point average determined.  At the time when an incomplete grade is resolved, a recalculation will take place

For the purpose of computing eligibility at the high school level, the quarter grades will be used at the end of the first and third quarter  At the end of the second and fourth quarter, the semester grades will be used to determine eligibility, unless quarter grades are available, in which case quarter grades will be used to determine eligibility.  The student must maintain a 2 0 GPA based upon a 4.0 grade point system.  The GPA used to determine eligibility is the GPA for the previous quarter or semester only and not a cumulative GPA.

In the event a student receives a GPA less than a 2 0, he/she shall be placed on academic probation for a period of one quarter as set forth above.  The fourth quarter of the eighth grade will be used to determine eligibility for the fall quarter of the freshman year  At the conclusion of the probationary quarter, if the student has earned a 2.0 GPA or better, the student will resume eligibility

Students in special education classes will meet the same general requirements as all other students; the exception would be those special education students whose academic progress is addressed in their Individual Education Plan (IEP)  Students enrolled in English as a Second Language Program (ESL) will meet the same general requirements as all other students, the exception would be those students who are making satisfactory progress in ESL but are temporarily unable to earn a "C" average.  In both cases, Special Education and English as a Second Language, the IEP Team or a school guidance committee shall be responsible for making the determination  The principal or designee shall maintain complete, current records of student eligibility to participate in student clubs

AR 6145(f)

**Cost of Student Activities**

Principals have the responsibility for carefully monitoring student activity costs and keeping these costs to a minimum. They will meet annually in the spring of the school year to establish a framework for activity costs for the following school year.

In fulfilling this responsibility, principals will.

1.    Establish a cost range for student body cards so that the price will be similar at all high schools

2    Restrict school dances, both formal and informal, to the Orange County/Long Beach area and hold as many scheduled dances as possible on the local school campus.

3    Permit no more than two (2) formal dances for the school year

4    Schedule a meeting with the activities director, pep squad advisor, parents and pep squad students elected for the following year. At this meeting the following regulations will be reviewed and emphasized:

    a    Limit pep squad participants to no more than three (3) uniforms for the school year.

    b.    Special uniforms will not be required for tryout activities. Physical education uniforms or standard school dress will suffice.

    c.    Pep squad participants are not to be financially responsible to buy favors for athletic teams on practice or game days.

    d    Pep squad participants are recommended but not required to attend summer camps.

    e    Student bodies may make arrangements to buy pom pons and megaphones for each participant

    f    Whenever rooter buses are provided, it is mandatory that pep squad members ride the buses to and from the games  A properly identified parent may request that the sponsor allow them to transport their son/daughter home.

    g.    Costs to the family on clothing accessories for each senior high school pep squad member is not to exceed $600.

5    Encourage the establishment of no-cost local training camps for pep squad participants and cooperate in forming joint training activities where possible.

6.    Keep school annual costs and student picture costs to a minimum and similar at all schools

AR 6145(g)

**Supervision**

The principal shall be responsible for the organization of all student activities   The principal shall provide adequate supervision, administer student finances and approve all student activities with the assistance of delegated members of the faculty.

Parents/guardians who wish their children to be excused from certain types of student activities for religious or physical reasons must present the request in writing to the principal who will make a decision within the parameters of Board policy

ORANGE UNIFIED SCHOOL DISTRICT
Orange, California

Approved:  (7-88)(5-90)(12-90) (12-92) 9-00

BP 6145.5(a)

Instruction

## Student Organizations and Equal Access

**Limited Open Forum**

The Governing Board believes that curriculum- and non-curriculum-related student organizations have an important place in students' lives. Besides extending and reinforcing the instructional program, such groups can give students practice in democratic self-government and provide wholesome social and recreational activities. Student organizations also serve to honor outstanding student achievement and to enhance school spirit and students' sense of belonging.

Since the district allows schools to sponsor student groups not directly tied to the curriculum, student-initiated groups not sponsored by the school or district have the right to meet on school premises during times established for a limited open forum in accordance with provisions of the federal Equal Access Act, Board policies and administrative regulations

**Representative Student Government**

The Governing Board extends to students in the respective schools of the District the privilege of organizing student body associations   Student activities undertaken with the sanction and support of school administrators shall be justified only as they relate to the District's goals and objectives.

District teachers and administrators shall provide necessary planning and supervision of all school sponsored activities to safeguard student welfare   As is the case in all school matters coming under the authority of the District, the Board reserves for itself the final authority in all matters relating to the operation of student organizations and student government

**Student Communication with District**

An important aspect of responsible government is the effective communication between the governing agency, its officials and those served. The Board accepts this concept as it relates to opportunities for student communication with the Board, members of administration and faculty.

The Student Advisory Council to the Board of Education, SACBE, shall be the vehicle used by the Board in communicating with the students.

**Equal Access of School Facilities to Student Groups**

The Board shall not discriminate or deny access to any student initiated group on the basis of religious, political, philosophical or any other content to be addressed at such meetings.

BP 6145.5(b)

The following guidelines shall govern the use of school facilities by students to conduct meetings within the open forum established by the Board, as implemented by Administrative Regulations:

1       Activities and meetings are student-initiated and voluntary.

2.      School authorities or District employees do not promote, lead or participate in such meetings.

3.      The presence of school authorities or District personnel at any student religious meetings is non-participatory in nature.

4.      The meeting does not in any way interfere with the conduct of regular instructional activities of the schools

5.      Student meetings are not controlled, conducted nor directed by persons or groups not affiliated with the schools  Such persons may attend student meetings but not on a regular basis

6       There shall be no expenditure of public funds beyond the incidental cost of providing the space for student-initiated meetings

7       There shall be no sponsorship of the meeting by the school, the government or its agents or employees
        (cf  1330 - Use of School Facilities) (cf. 6116 - Classroom Interruptions)

8.      There shall be no discussion of sexual activity during any student club meeting within the limited open forum established by the Board. (See AR 6145 5 - Prohibited Subject Matter - for definition of "discussion of sexual activity.")

9.      The District shall annually inform and notify parents of all student clubs meeting during that year in the limited open forum at their students' high school, and of their right to notify the District that they do not permit their student to attend or participate in the meetings of any particular student clubs  (See AR 6145.5 - Parental Notice and Right to Withhold Consent - for notice requirements.)

**Hazing**

No student shall conspire to engage in hazing, participate in hazing, or commit any act that causes or is likely to cause bodily danger, physical harm, or personal degradation or disgrace resulting in physical or mental harm to any fellow student or other person.  Persons violating this policy shall be subject to district discipline and penalties specified in law.  (E.C. 32051, 32052)

(Legal Reference next page)

BP 6145.5(c)

Legal Reference:

EDUCATION CODE

| | |
|---|---|
| 40 | Equal opportunity without regard to sex |
| 41 | School sponsored athletic programs, prohibited sex discrimination |
| 52 | Designation of secondary schools |
| 53 | Designation of high schools |
| 200-262 3 | Prohibition of discrimination on the basis of sex |
| 32050-32052 | Hazing |
| 33352 | Supervision of physical education by State Department of Education |
| 33353 | California Interscholastic Foundation; governing board has power to select athletic league representatives |
| 33353.5 | California Interscholastic Foundation; direct participation in student athletic Insurance program, limitation of receipt of funds |
| 33354 | Powers of State Department of Education over interscholastic athletics |
| 35179 | Powers and responsibilities of the board over interscholastic athletic programs, policies, and activities in its district; associations; nondiscrimination |
| 48930-48938 | Student organizations |
| 49020 | Athletic programs   Legislative intent |
| 49021 | Equal opportunity for male and female students |
| 49022 | Apportionment of funds for male and female students |
| 49023 | Expenditure of public funds, prohibited sex discrimination |

CODE OF REGULATIONS, TITLE 5

| | |
|---|---|
| 2 | Definitions |
| 5531 | Supervision of extracurricular activities of pupils |

PENAL CODE

| | |
|---|---|
| 627-627.10 | Access to school facilities |

TITLE VIII - THE EQUAL ACCESS ACT, 20 U.S C.A. Section 4071 et seq.

Hartzell v Connell (1984) Cal. 3d 899

Perumal et al v Saddleback Valley Unified School District, 88 Daily Journal D A.R. 1426

Board of Education of Westside Community Schools v Mergens, 58 U.S law Week 4720 (June 4, 1990)

Student Coalition for Peace v. Lower Merion School. (1985) 776 F.2d

ORANGE UNIFIED SCHOOL DISTRICT
Orange, California

Adopted· (7-88) (12-92) 9-00

AR 6145.5(a)

Instruction

Student Organizations and Equal Access

School-sponsored student organizations must be organized at the school, have a certificated advisor, be composed completely of current student body members and be approved by the Superintendent or designee in accordance with Board policy. They shall hold the majority of their meetings at school and have a democratic plan for the selection of members. Organization activities shall not conflict with the authority and responsibilities of school officials

**Limited Open Forum**

The Superintendent or designee shall not deny any student-initiated group access to school facilities during non-instructional time on the basis of religious, political, philosophical or any other content to be addressed at such meetings. The Superintendent or designee shall provide for a limited open forum on non-instructional time so that any such meetings do not interfere with regular school activities.

The Superintendent or designee shall identify the non-instructional time period(s) set aside for limited open forum meetings before or after actual classroom instruction times.

The Superintendent or designee shall insure that student meetings are voluntary, with no direction, control or regular attendance by non-school persons, and that students leave the meeting place in a clean, orderly and secure condition after meetings

School staff shall not promote or participate in these meetings, but may be assigned voluntarily to observe them for purposes of maintaining order and protecting student safety

Meetings held within the limited open forum shall entail no expenditure of public funds beyond the incidental cost of providing the meeting space. Any announcement of meetings shall clearly state that the group is not sponsored by the school or school staff. Such announcements may be posted in accordance with Board policy and state law applicable to all students, but students shall not use the school's equipment or public address system to publicize the meetings of groups not sponsored by the school.

A secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more non-curriculum related student groups to meet on school premises during non-instructional time.

The district shall be deemed to offer a fair opportunity to students who wish to conduct a meeting within its limited open forum if such school uniformly provides that:

AR 6145.5(b)

1.   The meeting is voluntary and student-initiated,

2.   There is no sponsorship of the meeting by the school, the government or its agents or employees;

3.   Employees or agents of the school or government are present at religious meetings only in a non-participatory capacity,

4.   The meeting does not materially and substantially interfere with the orderly conduct of educational activities within the school, and

5.   Non-school persons may not direct, conduct, control or regularly attend activities of student groups.

Nothing in this regulation shall be construed to authorize the district to:

1.   Influence the form or content of any prayer or religious activity;

2   Require any person to participate in prayer or other religious activity;

3   Expend public funds beyond the incidental cost of providing the space for student-initiated meetings;

4   Compel any school agent or employee to attend a school meeting if the content of the speech at the meeting is contrary to the beliefs of the agent or employee;

5   Sanction meetings that are otherwise unlawful;

6   Limit the rights of groups of students which are not of a specified numerical size; or

7.   Abridge the constitutional rights of any person

Nothing in this Regulation shall be construed to limit the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure that attendance of students at meetings is voluntary

1.   The term "secondary school" means a public school which provides secondary education as determined by State law.

2   The term "sponsorship" includes the act of promoting, leading, or participating in a meeting. The assignment of a teacher, administrator, or other school employee to a meeting for custodial purposes does not constitute sponsorship of the meeting.

AR 6145.5(c)

3.     The term "meeting" includes those activities of student groups which are permitted under a school's limited open forum and are not directly related to the school curriculum.

4.     The term "non-instructional time" means time set aside by the school before actual classroom instruction begins or after actual classroom instruction ends.

**Prohibited Subject Matter**

Board policy 6145.5(b)(8) prohibits "discussion of sexual activity" during any student club meeting within the District's limited open forum   For purposes of Board Policy 6145.5(b)(8) and this Regulation, the phrase "discussion of sexual activity" shall mean an explicit discussion of sex acts or sexual organs and shall not be interpreted to include discussion promoting understanding and acceptance of individuals of different sexual orientations, discussion concerning discrimination or harassment on the basis of sexual orientation, or discussions in which a student openly identifies himself or herself as lesbian, gay, bisexual, transgendered, homosexual, heterosexual, or questioning.   Furthermore, nothing in Board Policy 6145 5(b)(8) or this Regulation shall be interpreted to prevent any student club or its members from taking part in or discussing community events, such as fundraising walks relating to breast cancer or AIDS   All student club faculty advisors shall ensure compliance with and enforce this rule in a uniform manner at any and all meetings of all student clubs. In no event shall any conduct of one or more students in violating the rule be a basis for restricting the rights and opportunities of other club members who have not violated the rule, including but not limited to the right to continue conducting or attending meetings of any student club including the student club in which the violation(s) occurred.

**Parental Notice and Right to Withhold Consent**

Board Policy 6145 5(b)(9) and this Regulation require that each parent or legal guardian of each District student be sent an annual notice of all student clubs recognized at their student's high school during that academic year   The District and each high school within the District shall send such notice to parents and legal guardians at the beginning of each academic year concurrently and in the same packet with other high school registration materials regularly sent to parents and legal guardians and such notice will be printed on such paper stock as is used for the majority of materials sent to parents as part of the regular school registration packet, and that such notices will not be sent to parents or legal guardians in any other mailing or transmission separate and apart from such registration materials, nor in a separate envelope within the registration packet   The parental notice form will list alphabetically and in a uniform manner all active student clubs at the pertinent high school, with the club name, a brief description of the club written or approved by the club itself, and the name of the club's advisor.  The parental notice form will, without drawing attention to any particular club, advise the parent or legal guardian of his or her right to inform the school of any student club that the parent or legal guardian does not wish to permit his or her student to participate in or attend the meetings of, and advise the parent or legal guardian that he or she is presumed to consent to his or her student's participation in any of the student clubs listed on the notice if the school does not receive written notice of a parent's request that his or her child not participate in any particular club.  The notice shall include the following prefatory language and no other prefatory language:

AR 6145.5(d)

"As part of its educational mission for high school students, Orange Unified School District allows both curriculum- and noncurriculum-related student clubs to meet at (Name of) High School during noninstructional hours (e.g., before classes begin, during lunch period, after classes end). The Governing Board believes that curriculum- and noncurriculum-related student organizations can have an important place in students' lives  Besides extending and reinforcing the instructional program, such groups can give students practice in democratic self-government and civil social discourse, as well as providing social, intellectual, and recreational opportunities

"Noncurriculum-related student clubs and the viewpoints and speech expressed at meetings of such clubs do not necessarily reflect the views of the Orange Unified School District or the Board of Education. The District and the Board are not affiliated with noncurriculum-related student clubs and do not direct, support, promote, endorse or otherwise sponsor noncurriculum-related student clubs, nor any speech or viewpoint expressed at the meeting of any such club. The District and (Name of) High School merely provide a limited open forum for such clubs to form and meet, in compliance with District policies and regulations, as well as federal law.

"If eligible, your high school student will have the opportunity to join one or more such clubs and to attend and participate in the meetings of any club that he or she joins. In order to be eligible to participate in student clubs, your student must. (1) be enrolled in and actively attending (Name of) High School, and (2) maintain a minimum grade point average under District policies applicable to cocurricular and extracurricular activities."

**Organizations and Representative Student Government**

The following procedures shall be adhered to in regard to student activities

1    No student body constitution or bylaws shall be in conflict with Board policy, District procedures, the laws of the State of California or of the United States of America.

2.    The elected or appointed student body officers shall be required to affirm and support their respective student body constitutions and bylaws, the Constitution of the State of California and of the United States of America. Before taking office, student body officers shall take the following oath:

<div align="center">

OATH OF ALLEGIANCE FOR STUDENT BODY OFFICERS
ORANGE UNIFIED SCHOOL DISTRICT
COUNTY OF ORANGE, STATE OF CALIFORNIA

</div>

This oath must be administered by an elected student body officer or by a certificated school official

I, _____, do solemnly swear (or affirm) (type or print name) that I support the Constitution of the United States, the Constitution of the State of California and the Constitution of _____ School; that I will bear true faith and allegiance to the Constitution of the United States, the Constitution of the State of California and the Constitution of

AR 6145.5(e)

_____ School, that I take this obligation freely, without any mental reservations or purpose of evasion, and that I will well and faithfully discharge the duties of _____ _____ upon which I am about to enter.

Signature of Student Body Officer _____

Official Position Title _____

Taken, subscribed and sworn to before me this _____ day of _____, 19_____.

Signature and Title of Authorized Official _____

3    Every elected or appointed student body officer and student advisor must accept a responsibility to see that all student body activities authorized by the District and sponsored by the students are conducted in accordance with the laws of the County of Orange, the State of California and the United States of America

4.    All student body constitutions, bylaws and/or proposed amendments thereto must be approved by the school administration and the Governing Board before being presented to the student body for ratification and adoption

5.    All student body constitutions and bylaws shall provide for the representation of all students in the process of student government as established in this nation.

6    Student legislative bodies shall have representation from all grades of the school

7    All student officers, except multiple office groups (cheer- leaders, song leaders, etc.) shall be elected by a majority of the votes cast for qualified candidates for that office.

8    All official meetings of the student body (general assemblies, cabinet meetings, legislature meetings, etc.) shall begin with the Pledge of Allegiance to the Flag of the United States of America.  Student officers, when participating in a leadership role in an official meeting of the students, shall participate in the Pledge of Allegiance to the Flag of the United States of America (Leadership Role:  A student officer is deemed to be participating in a leadership role in an official meeting when he/she is appearing on a platform in front of an audience or when he/she is presiding at an official meeting.)

9.    All student body expenditures must be approved by a duly elected or appointed and authorized student officer and the school administration

AR 6145.5(f)

10.     Each secondary school shall establish a student body election calendar which shall:

    a.    Include the opening and closing dates by which students shall notify the person in charge of school activities of their intent to run for student leadership office. (During this period, the administration is responsible to check if the prospective candidate(s) meet the requirements established for leadership office.)

    b    Establish a date immediately following the final date to declare candidacy for an inservice training program for all qualified candidates.

    c    Inservice training shall include a review of all rules, regulations and policies governing student activities, the responsibilities and obligations related to leadership roles, and other areas related to student activities  Candidates shall be informed of procedures to follow to become involved in issues of student responsibility and interest in relation to Board authority and responsibility.

    d.    Prospective candidates shall sign a notice of intent to abide by the rules and regulations relative to student activities as established and the intent to sign the appropriate oath of office.

           Students elected to office who at any time during their term of office fail to meet all of the requirements as established by the Board, school constitutions and/or bylaws, shall automatically forfeit their right to continue in office

    e.    Petitions will be distributed to those students meeting leadership candidacy requirements

    f.    Establish a date student petitions are to be completed and filed with the person in charge of student activities.

    g.    Establish a date for student body assemblies for candidates to campaign

    h.    Establish a date for voting for student body officers.

    i.    Establish a date for run-off elections, if necessary

## Student Communication with District

Communication between the Board and the student community shall be effected, at least in part, by the functioning of the following organization and appropriate administrative procedures·

AR 6145.5(g)

1.   A Student Advisory Council (SAC) shall be formed whose "ultimate hope is to see student attitudes and aspirations voiced in a mature and constructive manner," and furthermore, "to open a new avenue of communication with the Board members and other District level administrators."

    a.   SAC shall be composed of five (5) members from each senior high school in the District

    b.   One of the five (5) members from each high school will be identified as the Board Representative from that school

    c.   Board Representatives attend meetings of the District Board as ex-officio members.

    d   SAC meetings will be held as needed

    e   A central office administrator(s) will be assigned as advisor(s) to SAC

2.   Guidelines for SAC operation shall be as follows:

    a   Robert's Rules of Order will guide the transaction of business in all SAC meetings.

    b   Resolutions or other matters of business to be presented to the Board shall be submitted to the Superintendent by noon of the Friday preceding the Board meeting

    c   The agenda for SAC meetings will be drawn up by the chairman and the central office administration.

    d   Activities directors from each school represented on SAC will attend SAC meetings as observers and resource personnel

    e   It is the responsibility of SAC members to see that representatives of student government and building administration are kept aware of SAC plans and proposals.

    f.   As an agent for improved communication and reflection of student opinion, it shall be the responsibility of SAC members to see that SAC plans and proposals are based upon support from the student community.

    g.   Proposals to the Board shall be made in an orderly and well developed fashion using the "Guide for the Preparation of Proposals to District Administration or Board of Education" as a format.

Approved: (7-88) (12-92) 9-00

ORANGE UNIFIED SCHOOL DISTRICT
Orange, California

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067-4276.

On September 25, 2000, I served the foregoing document described as STIPULATION AND REQUEST FOR DISMISSAL OF THE LAWSUIT AND [PROPOSED] ORDER THEREON on each interested party, as follows:

> James A. Bowles, Esq.
> E. Sean McLoughlin, Esq.
> Hill, Farrer & Burrill LLP
> One California Plaza, 37th Floor
> Los Angeles, CA 90071-3147

[X]    (BY MAIL) I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party, as set forth above. I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Irell & Manella LLP, Los Angeles, California. I am readily familiar with Irell & Manella LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

Executed on September 25, 2000, at Los Angeles, California.

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

| Maryann Cullen | _Maryann Cullen_ |
|----------------|------------------|
| (Type or print name) | (Signature) |

337974